

# CHICAGO ASSOCIATION OF REALTORS®
## Residential Real Estate Purchase and Sale Contract
*(For use with Single Family Homes, Fee Simple Townhomes, or Shared Community Associations)*
**This Contract is Intended to be a Binding Real Estate Contract**

1. **Contract.** This Residential Real Estate Purchase and Sale Contract ("Contract") is made by and between **OSAROSEMWEN ERHABOR** ("Buyer"), and _____ ("Seller") (Buyer and Seller collectively, ("Parties"), with respect to the purchase and sale of the real estate and improvements located at **2148 E 97TH PL, CHICAGO IL 60617** ("Property").

   The Property P.I.N. # is **25122170200000** Lot Size: _____.
   Additional P.I.N. #(s) *(if applicable)* _____

2. **Fixtures and Personal Property.** At Closing (as defined in Paragraph 8 of this Contract), in addition to the Property, Seller shall transfer to Buyer by a Bill of Sale all heating, cooling, electrical and plumbing systems, and the following checked and enumerated items (collectively, "**Fixtures and Personal Property**"), which Fixtures and Personal Property are owned by Seller, and to Seller's knowledge, are currently present on the Property and in operating condition as of the Acceptance Date:

   - ☐ Refrigerator
   - ☐ Oven/Range
   - ☐ Microwave
   - ☐ Dishwasher
   - ☐ Garbage disposal
   - ☐ Trash compactor
   - ☐ Washer
   - ☐ Dryer
   - ☐ Water Softener
   - ☐ Sump Pump
   - ☐ Smoke and carbon monoxide detectors
   - ☐ Intercom system
   - ☐ Security system ( rented or owned) *(check one)*
   - ☐ Satellite Dish
   - ☐ Attached TV(s)
   - ☐ TV Antenna
   - ☐ Multimedia equipment
   - ☐ Central air conditioner
   - ☐ Window air conditioner
   - ☐ Electronic air filter
   - ☐ Central humidifier
   - ☐ Lighting fixtures
   - ☐ Electronic garage door(s) with ___ remote unit(s)
   - ☐ Tacked down carpeting
   - ☐ Fireplace screen and equipment
   - ☐ Fireplace gas log
   - ☐ Firewood
   - ☐ Attached gas grill
   - ☐ Existing storms and screens
   - ☐ Window treatments
   - ☐ Other Equipment
   - ☐ Built-in or attached shelves or cabinets
   - ☐ Ceiling fan(s)
   - ☐ Radiator covers
   - ☐ All planted vegetation
   - ☐ Outdoor play set/swings
   - ☐ Outdoor shed

   Seller shall also transfers the following: _____ **CASH**
   The following items are excluded: _____

3. **Purchase Price.** The purchase price for the Property (including the Fixtures and Personal Property) is $ **54,000.00** ("Purchase Price").

4. **Closing Cost Credit (Optional).** *Check if applicable* ☐ Seller agrees to credit to Buyer at Closing *(check one)* ☐ $_____ OR ☐ ____ % of Purchase Price ("*Closing Cost Credit*"), to be applied to prepaid expenses, closing costs or both as lender permits, and that such credit appears on the Master Statement or Closing Disclosure.

5. **Home Warranty (Optional).** *Check if applicable* ☐ Seller agrees to provide Buyer with a Home Warranty at Closing, at a cost of no less than: $_____.

6. **Earnest Money.** Upon the Parties execution and delivery of this Contract, Buyer shall deposit with **Century 21 Affiliated** ("Escrowee"), earnest money in the amount of $ **1,900.00**, in the form of **Certified Check** within ___ Business Days after the Acceptance Date. The earnest money shall be increased to *(check one)* ☐ ____ % [percent] of the Purchase Price, OR ☐ a total of $_____ ("*Earnest Money*") within ___ Business Days after the conclusion of the Attorney Approval Period (as established in Paragraph 15 of this Contract). The Parties acknowledge and agree that (i) the Parties shall execute all necessary documents with respect to the handling of the Earnest Money in form and content mutually agreed upon between the Parties and (ii) unless otherwise agreed, Buyer shall pay all expenses incurred in opening an escrow account for the Earnest Money.

7. **Mortgage Contingency.** Parties agree that this Contract *(check one)* ☐ [is] ☐ [is not] subject to Paragraph 7, Mortgage Contingency. If [is not] is checked, then this paragraph 7 does not apply. This Contract is contingent upon Buyer securing by **CASH** ("*First Commitment Date*") a written mortgage commitment for a fixed rate or an adjustable rate mortgage permitted to be made by a U.S. or Illinois savings and loan association, bank, or other authorized financial institution, in the amount of *(check one)* ☐ $_____ OR ☐ ___ % [percent] of the Purchase Price, the interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed ___ % per year, amortized over ___ years, payable monthly, loan fee not to exceed ___ %, plus appraisal and credit report fee, if any ("*Required Commitment*"). Buyer shall pay for private mortgage insurance as required by the lending institution. **If a FHA or VA mortgage is to be obtained, Rider 8 or Rider 9 shall be attached to this Contract.** (1) If Buyer is unable to obtain the Required Commitment by the First Commitment Date, Buyer shall so notify Seller in writing on or before that Date. Thereafter, Seller may, within 30 Business Days after the First Commitment Date ("*Second Commitment Date*"), secure the Required Commitment for Buyer upon the same terms, and may extend the Closing Date by 30 Business Days. The Required Commitment may be given by Seller or a third party. Buyer shall furnish all requested credit information, sign customary documents relating to the application and securing of the Required Commitment, and pay one application fee as directed by Seller. Should Seller choose not to secure the Required Commitment for Buyer, this Contract shall be null and void as of the First Commitment Date, and the Earnest Money shall be returned to Buyer. (2) If Buyer notifies Seller on or before the First Commitment Date that Buyer has been unable to obtain the Required Commitment, and neither Buyer nor Seller secures the Required Commitment on or before the Second Commitment Date, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. (3) If Buyer does not provide any notice to Seller by the First Commitment Date, Buyer shall be deemed to have waived this contingency and this Contract shall remain in full force and effect.

8. **Closing.** Buyer shall deliver the balance of the Purchase Price (less the amount of the Earnest Money, Closing Cost Credit, plus or minus prorations and escrow fees, if any) to Seller and Seller shall execute and deliver the Deed (as defined below) to Buyer ("*Closing*"). Closing shall occur on or prior to **11/3/2022** at a time and location mutually agreed upon by the Parties ("*Closing Date*"). Seller must provide Buyer with good and merchantable title prior to Closing.

9. **Possession.** Unless otherwise agreed to in Rider 22 Post-Closing Possession Rider, Seller agrees to deliver possession of the property at Closing. If Seller does not surrender possession at Closing, Seller shall be considered in default of this Contract.

10. **Deed.** At Closing, Seller shall execute and deliver to Buyer, or cause to be executed and delivered to Buyer, a recordable warranty deed (*Deed*) with release of homestead rights (or other appropriate deed if title is in trust or in an estate), or Articles of Agreement, if applicable, subject only to the following, if any: covenants, conditions, and restrictions of record; public and utility easements; acts done by or suffered through Buyer; all special governmental taxes or assessments confirmed and unconfirmed; homeowners or condominium association declaration and bylaws, if any; and general real estate taxes not yet due and payable at the time of Closing.

11. **Real Estate Taxes.** Seller represents that the total 20**20** general real estate taxes for the Property and all P.I.N.s referenced paragraph 1 of this Contract were $ **779.75** . General real estate taxes for the Property are subject to the following exemptions (*check box if applicable*): ☐ Homeowner's ☐ Senior Citizen's ☐ Senior Freeze. ☐ Historical Tax Freeze. General real estate taxes shall be prorated based on **100** % of the most recent ascertainable full year tax bill, unless mutually agreed to otherwise by the Parties in writing prior to the expiration of the Attorney Approval Period.

12. **Homeowners Association.** Parties agree that the Property (*check one*) ☐ [is] ☐ [is not] a part of a homeowners association and that either the Illinois Common Interest Community Association Act, Illinois Condominium Property Act, or other applicable state association law applies ("*Governing Law*"). If [is not] is checked, then this paragraph 12, Homeowners Association, does not apply. Seller represents that as of the Acceptance Date, the regular monthly assessment pertaining to the Property is $_____; a special assessment (*check one*) ☐ [has] OR ☐ [has not] been levied. The original amount of the special assessment pertaining to the Property was $_____, and the remaining amount due at Closing will be $_____ and (*check one*) ☐ [shall] OR ☐ [shall not] be assumed by Buyer at Closing. Buyer acknowledges and agrees that (i) the representations in this Paragraph are provided as of the Acceptance Date; (ii) this information may change, and these fees may increase, prior to Closing. Notwithstanding anything to the contrary contained in this Paragraph 12, Seller shall notify Buyer of any proposed special assessment, increase in any regular assessment, and amendments or revisions to any items stipulated by the resale disclosure provisions of the Governing Law ("*Association Documents*"), including but not limited to the declaration, bylaws, rules and regulations, and the prior and current years' operating budgets, between the Date of Acceptance and Closing. Seller shall notify Buyer within 5 Business Days (and in no event later than the Closing Date) after Seller receives notice of any proposed special assessment, increase in any regular assessment, and amendments or revisions to any of the Association Documents. Seller shall furnish Buyer a statement from the proper association representative certifying that Seller is current in payment of assessments; and, if applicable, proof of waiver or termination of any right of first refusal or similar options contained in the bylaws of the association for the transfer of ownership. Seller shall deliver to Buyer the Association Documents within _____ Business Days of the Acceptance Date. In the event the Association Documents disclose that the Property is in violation of existing rules, regulations, or other restrictions or that the terms and conditions contained within the documents would unreasonably restrict Buyer's use of the Property or would increase the financial considerations which Buyer would have to extend in connection with owning the Property, then Buyer may declare this Contract null and void by giving Seller written notice within 5 Business Days after the receipt of the Association Documents, listing those deficiencies which are unacceptable to Buyer, and thereupon all Earnest Money deposited shall be returned to Buyer. If written notice is not served within the time specified, Buyer shall be deemed to have waived this contingency, and this Contract shall remain in full force and effect. Seller agrees to pay any applicable processing/move-out/transferring fees as required by the association, and Buyer agrees to pay the credit report and move-in fee if required by the association. If the right of first refusal or similar option is exercised, this Contract shall be null and void and the Earnest Money shall be returned to Buyer, but Seller shall pay the commission pursuant to Paragraph U of the General Provisions of this Contract.

13. **Disclosures.** Buyer has received the following (*check yes or no*): (a) Illinois Residential Real Property Disclosure Report: ☐ Yes/☒ No; (b) Heat Disclosure (gas/electric): ☐ Yes/☒ No; (c) Lead Paint Disclosure and Pamphlet: ☐ Yes/☒ No; and (d) Radon Disclosure and Pamphlet: ☐ Yes/☒ No.

14. **Dual Agency.** Licensee (*check one*) ☐ [is] ☐ [is not] acting as a "Designated Agent" for both Buyer and Seller, ("Dual Agency"). If [is not] is checked this paragraph 14 does not apply. The Parties confirm that they have previously consented and agreed to have _____ ("*Licensee*") act as *Dual Agent* in providing brokerage services on behalf of the Parties and specifically consent to Licensee acting as *Dual Agent* on the transaction covered by this Contract. Initial below if Buyer and Seller consent to *Dual Agency* on the transaction covered by this Contract.

Buyer Initials: _____   Buyer Initials: _____   Seller Initials: _____   Seller Initials: _____

15. **Attorney Modification.** Within **5** Business Days after the Acceptance Date ("*Attorney Approval Period*"), the attorneys for the respective Parties, by notice, may: (a) approve this Contract in its entirety; or (b) propose modifications to this Contract ("*Proposed Modifications*"), which Proposed Modifications shall not include modifications to the Purchase Price or broker's compensation. If written agreement is not reached by the Parties with respect to resolution of the Proposed Modifications, then either Party may terminate this Contract by serving notice, whereupon this Contract shall be null and void and the Earnest Money returned to Buyer. *Unless otherwise specified, all notices shall be provided in accordance with paragraph D of the General Provisions. In the absence of delivery of Proposed Modifications prior to the expiration of the Attorney Approval Period, the provisions of this paragraph shall be deemed waived by the Parties and this Contract shall remain in full force and effect.*

16. **Inspection.** Within **5** Business Days after the Acceptance Date ("*Inspection Period*"), Buyer may conduct, at Buyer's sole cost and expense (unless otherwise provided by law) home, radon, environmental, lead-based paint and/or lead-based paint hazards (unless separately waived), wood infestation, and/or mold inspections of the Property ("*Inspections*") by one or more properly licensed or certified inspection personnel (each, an "*Inspector*"). The Inspections shall include only major components of the Property, including, without limitation, central heating, central cooling, plumbing, well, and electric systems, roofs, walls, windows, ceilings, floors, appliances, and foundations. A major component shall be deemed to be in operating condition if it performs the function for which it is intended, regardless of age, and does not constitute a health or safety threat. Buyer shall indemnify Seller from and against any loss or damage to the Property or personal injury caused by the Inspections, Buyer, or Buyer's Inspector. Prior to expiration of the Inspection Period, Buyer shall notify Seller or Seller's attorney in writing ("*Buyer's Inspection Notice*") of any defects disclosed by the Inspections that are unacceptable to Buyer, together with a copy of the pertinent pages of the relevant Inspections report. **Buyer agrees that minor repairs and maintenance collectively costing less than $250 shall not constitute defects covered by this Paragraph.** If the Parties have not reached written agreement resolving the inspection issues within the Inspection Period, then either Party may terminate this Contract by written notice to the other Party. In the event of such notice, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. *In the absence of written notice prior to the expiration of the Inspection Period, this provision shall be deemed waived by all Parties, and this Contract shall be in full force and effect.*

107 **17.**  **General Provisions, Riders and Addendums.** THIS CONTRACT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY BUYER AND SELLER AND
108 DELIVERED TO BUYER OR BUYER'S DESIGNATED AGENT. THIS CONTRACT INCLUDES THE GENERAL PROVISIONS ON THE LAST PAGE OF THIS CONTRACT AND THE
109 FOLLOWING RIDERS AND ADDENDUMS, IF ANY, _Bankruptcy Rider_
110 _____, WHICH ARE ATTACHED TO AND MADE A PART OF THIS CONTRACT.

111 This Contract shall be of no force or effect if not accepted by Seller on or before _____.

112 OFFER DATE: 09/20/2022     ACCEPTANCE DATE: 9/21/22 ("Acceptance Date").

113 **BUYER'S INFORMATION:**     **SELLER'S INFORMATION:**
114 Buyer's Signature: Oerhabor     Seller's Signature: [signature], trustee
115 Buyer's Name (print): OSAROSEMWEN ERHABOR     Seller's Name (print): Ariane Holtschlag, trustee
116 Buyer's Signature: _____     Seller's Signature: _____
117 Buyer's Name (print): _____     Seller's Name (print): _____
118 Address: 1413 N. Park Dr. MT PROSPECT IL     Address: 105 W Madison Suite 1500, Chicago IL 60602
119 Phone 1: _____ Phone 2: _____     Phone 1: 312-878-4830 Phone 2: _____
120 Email 1: _____     Email 1: aholtschlag@wfactorlaw.com
121 Email 2: _____     Email 2: _____

122 The names and addresses set forth below are for informational purposes only and subject to change

123 **Buyer's Broker's Information:**     **Seller's Broker's Information:**
124 Designated Agent: Sam Aiwuyo     Designated Agent: _____
125 Agent MLS #: 149857 Agent License #: _____     Agent MLS #: _____ Agent License #: _____
126 Brokerage: Samerosa Realty     Brokerage: _____
127 Brokerage MLS #: 18953 Brokerage License #: _____     Brokerage MLS #: _____ Brokerage License #: _____
128 Address: 835 E 87th Pl. Chicago     Address: _____
129 Agent Phone: 773-817-2110 Agent Fax: _____     Agent Phone: _____ Agent Fax: _____
130 Email: _____     Email: _____

131 **Buyer's Attorney's Information:**     **Seller's Attorney's Information:**
132 Attorney Name: TITILAYO OSINUBI     Attorney Name: Peter N Metrou
133 Address: _____     Address: 123 W Washington St. Suite 216, Oswego IL 60543
134 Phone: 773-552-9691 Fax: _____     Phone: 630-551-7171 Fax: _____
135 Email: _____     Email: _____

136 **Buyer's Lender's Information:**
137 Lender's Name: _____
138 Company Name:   (CASH)
139 Address: _____
140 Phone: _____ Fax: _____
141 Email: _____

**GENERAL PROVISIONS**

A. **Prorations.** Rent, interest on existing mortgage, if any, water taxes and other items shall be prorated as of the Closing Date. Security deposits, if any, shall be paid to Buyer at Closing. Notwithstanding anything to the contrary contained in Paragraph 9 of this Contract, if the Property is improved as of the Closing Date, but the last available tax bill is on vacant land, Seller shall place in escrow an amount equal to 2% of the Purchase Price and the Parties shall reprorate taxes within 30 days after the bill on the improved property becomes available.

B. **Uniform Vendor and Purchaser Risk Act.** The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract.

C. **Title.** At least 5 Business Days prior to the Closing Date, Seller shall deliver to Buyer or his agent evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance of a title insurance company bearing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract and to general exceptions contained in the commitment. Delay in delivery by Seller of a Commitment for Title Insurance due to delay by Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract. Every Commitment for Title Insurance furnished by Seller shall be conclusive evidence of title as shown. If evidence of title discloses other exceptions, Seller shall have 30 days after Seller's receipt of evidence of title to cure the exceptions and notify Buyer accordingly. As to those exceptions that may be removed at Closing by payment of money, Seller may have those exceptions removed at Closing by using the proceeds of the sale.

D. **Notice.** All notices required by this Contract shall be in writing and shall be served upon the Parties or their attorneys at the addresses provided in this Contract. The mailing of notice by registered or certified mail, return receipt requested, shall be sufficient service. Notices may also be served by personal delivery or commercial delivery service or by the use of a facsimile machine. In addition, facsimile signatures or digital signatures shall be sufficient for purposes of executing this Contract and shall be deemed originals. E-mail notices shall be deemed valid and received by the addressee when delivered by e-mail and opened by the recipient. Each Party shall retain a copy of proof of facsimile transmission and email notice and provide such proof, if requested.

E. **Disposition of Earnest Money.** In the event of any default by either Party, Escrowee may not distribute the Earnest Money without the joint written direction of Seller and Buyer or their authorized agents. However, if Escrowee has not received the joint written direction of both Seller and Buyer or their authorized agents, then Escrowee may give written notice to Seller and Buyer of the intended disbursement of Earnest Money, indicating the manner in which Escrowee intends to disburse in the absence of any written objection. If neither Party objects, in writing, to the proposed disposition of the Earnest Money within 30 days after the date of the notice, then Escrowee shall proceed to dispense the Earnest Money as previously noticed by Escrowee. If either Seller or Buyer objects in writing to the intended disposition within the 30 day period, then the Escrowee may deposit the Earnest Money with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Escrowee may withdraw from the Earnest Money all costs, including reasonable attorney's fees, related to the filing of the Interpleader, and the Parties shall indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses arising out of those claims and demands. In the event of default by Buyer, the Earnest Money, less expenses and commission of the listing broker, shall be paid to Seller. If Seller defaults, the Earnest Money, at the option of Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligations of this Contract.

F. **Operational Systems.** Seller represents that the heating, plumbing, electrical, central cooling, ventilating systems, appliances, and fixtures on the Property are in working order and will be so at the time of Closing. Buyer shall have the right to enter the Property during the 48-hour period immediately prior to Closing solely for the purpose of verifying that the operational systems and appliances serving the Property are in working order and that the Property is in substantially the same condition, normal wear and tear excepted, as of the Acceptance Date.

G. **Insulation and Heat Disclosure Requirements.** If the Property is new construction, Buyer and Seller shall comply with all insulation disclosure requirements as provided by the Federal Trade Commission, and Rider 13 is attached. If the Property is located in the City of Chicago, Seller and Buyer shall comply with the provisions of Chapter 5-16-050 of the Municipal Code of Chicago concerning heating cost disclosure for the Property.

H. **Code Violations.** Seller warrants that no notice from any city, village, or other governmental authority of a dwelling code violation that currently exists on the Property has been issued and received by Seller or Seller's agent ("*Code Violation Notice*"). If a Code Violation Notice is received after the Acceptance Date and before Closing, Seller shall promptly notify Buyer of the Code Violation Notice.

I. **Escrow Closing.** At the written request of Seller or Buyer received prior to the delivery of the Deed, this sale shall be closed through an escrow with a title insurance company, in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by the title insurance company, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, this Contract and the Earnest Money shall be deposited in the escrow, and the Broker shall be made a party to the escrow with regard to commission due. The cost of the escrow shall be divided equally between Buyer and Seller.

J. **Legal Description and Survey.** At least 5 Business Days prior to Closing, Seller shall provide Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, showing the present location of all improvements. If Buyer or Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at Buyer's expense. The Parties may amend this Contract to attach a complete and correct legal description of the Property.

K. **Affidavit of Title; ALTA.** Seller agrees to furnish to Buyer an affidavit of title subject only to those items set forth in this Contract, and an ALTA form if required by Buyer's mortgagee, or the title insurance company, for extended coverage.

L. **RESPA.** Buyer and Seller shall make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures Act of 1974, as amended.

M. **Transfer Taxes.** Seller shall pay the amount of any stamp tax imposed by the state and county on the transfer of title, and shall furnish a completed declaration signed by Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by Seller or Seller's agent or meet other requirements as established by any local ordinance with regard to a transfer or transaction tax. Any real estate transfer tax required by local ordinance shall be paid by the person designated in that ordinance.

N. **Removal of Personal Property.** Seller shall remove from the Property by the Closing Date all debris and Seller's personal property not conveyed by Bill of Sale to Buyer.

O. **Surrender.** Seller agrees to surrender possession of the Property in broom-clean condition and in the same condition as it was on the Acceptance Date, ordinary wear and tear excepted, subject to Paragraph B of the General Provisions of this Contract. To the extent that Seller fails to comply with this paragraph, Seller shall not be responsible for that portion of the total cost related to this violation that is below $250.00.

P. **Time.** Time is of the essence for purposes of this Contract.

Q. **Number.** Wherever appropriate within this Contract, the singular includes the plural.

R. **Flood Plain Insurance.** In the event the Property is in a flood plain and flood insurance is required by Buyer's lender, Buyer shall pay for that insurance.

S. **Business Days and Time.** Business Days are defined as Monday through Friday, excluding Federal holidays. Business Hours are defined as 8:00 AM to 6:00 PM Chicago Time.

T. **Patriot Act.** Seller and Buyer represent and warrant that they are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by Executive Order or the United States Treasury Department as a Specially Designated National and Blocked Person, or other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation which is enforced or administered by the Office of Foreign Assets Control ("OFAC"), and that they are not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or nation. Each Party shall defend, indemnify, and hold harmless the other Party from and against any and all claims, damages, losses, risks, liabilities, and expenses (including reasonable attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

U. **Brokers.** The real estate brokers named in this Contract shall be compensated in accordance with their agreements with their clients and/or any offer of compensation made by the listing broker in a multiple listing service in which the listing and cooperating broker both participate.

V. **Executed Contract.** The listing broker shall hold the fully executed copy of this Contract.

Buyer Initials: O E   Buyer Initials: _____   Seller Initials: _____   Seller Initials: _____

# Bankruptcy Rider
## to Residential Real Estate Purchase and Sale Contract
### Dated September 21, 2022

R-1.    This Rider is attached to and made a part of the printed Sales Contract to which it is attached for the sale of the property located at **2148 E 97th Place, Chicago, IL 60617** ("Real Estate"), by and between **Ariane Holtschlag, not personally, but solely as bankruptcy trustee of the Estate of Velma Latrice Griggley**, Debtor(s) in the chapter 7 case pending in the Northern District of Illinois under **case number 22-07885** ("Seller"), and **Osarosemwen Erhabor**, ("Buyer"). In the event of a conflict or inconsistency between the terms of this Rider and the printed form Contract, the terms of this Rider shall control.

R-2.    This Sales Contract and the obligations contemplated hereby are and at all times shall be subject to and conditioned upon the prior approval of the United States Bankruptcy Court for the Northern District of Illinois in the bankruptcy case referenced above in R-1. Seller shall promptly file a motion for approval of this Sales Contract ("Motion") with the United States Bankruptcy Court and use Seller's best efforts to schedule the court hearing upon the motion within a reasonable time. In the event Seller is unable to obtain an order approving the Sales Contract within 45 days of acceptance of the Sale Contract, or the Court denies the motion, this Sales Contract shall be deemed null and void and the earnest money deposit shall be returned to Buyer.

R-3.    Buyer acknowledges that Seller is required by applicable bankruptcy law to provide notice of the court hearing on the Motion to third parties who will be eligible to submit competitive bids for the Property at the time of the hearing, provided, however that any such competitive bids considered by Seller Trustee must be at least $3,000.00 higher than Buyer's bid, must be accompanied by a $10,000.00 earnest money deposit and must be on the same cash terms of the Sales Contract. Further, Buyer fully acknowledges and understands that, at any time prior to Closing, the Bankruptcy Court may permit the above named Debtor and order that the Trustee to allow said Debtor to buy-out the Bankruptcy Estate's interest in the Real Estate. In either situation, the Sales Contract shall be deemed null and void and the earnest money deposit shall be returned to Buyer.

R-4.    At a minimum of ten (10) days following entry of the Bankruptcy Court's order approving the Sales Contract and the proposed sale, Seller shall sell the Property to Buyer pursuant to sections 363 (b) and (f) of the Bankruptcy Code, free and clear of all liens, claims or interests (except for those permitted exceptions set forth in the Sales Contract), with any liens, claims or interests to attach to the proceeds of sale after payment of all closing costs. Trustee shall convey the Property to Buyer by a recordable Trustee's quit claim deed in an "as-is" "where-is condition".

R-5.    Subject to Buyer's inspection rights under the Sales Contract, Buyer has or will have conducted such prior investigations and made such prior examinations of the Property and any records or other documents so as to be sufficiently informed of the nature and condition of the Property. The Property is being sold in an "as is, where is" condition. Seller has not made and expressly states that he is not hereby making any representation or warranty of any kind or nature with respect to the Property. Seller does not provide a Bill of Sale for any personal property located thereon on the date of Closing and Buyer takes personal property "as-is" "where-is". Buyer

{00227512}

understands and acknowledges that the personal property as identified in Paragraph 2 of this Contract may not remain with the Real Estate and Buyer cannot claim any set-offs, credits or otherwise for any personal property that is removed prior to Closing. Further, any and all language stating that the Real Estate shall be left in broom swept condition is hereby deleted from the Sales Contract.

R-6   Buyer acknowledges and understands that irrespective of the provisions, covenants, conditions and Seller Obligations per the Sales Contract, Seller is not obligated to and shall not provide the following items customarily provided for by a Seller: Survey; Bill of Sale; Affidavit of Title; Well and Septic Insprctions and Reports.

R-7   Seller has never occupied the Property. Buyer shall rely solely upon Buyer's investigations, inspections, and due diligence regarding the acquisition of the Property and hereby affirmatively acknowledges that Buyer is not relying upon any representations or warranties of the Seller, whether so stated in the Sales Contract, orally or otherwise.

R-8.   This Contract is executed by Ariane Holtschlag, not personally, but solely as bankruptcy trustee, in the exercise of the power and authority conferred upon and vested in her pursuant to the United States Bankruptcy Code, 11 U.S.C. section 101, *et seq*. No personal liability shall be asserted or be enforceable against the Seller Trustee, individually, and the Bankruptcy Estate of the Debtor, because or in respect of the execution of this Contract, the performance of the obligations hereunder, or the transaction contemplated hereby, all such liability, if any, being expressly waived by Buyer.

R-9   In the event of a Seller breach, Buyer's only remedy shall be the return of the earnest money and termination of the Contract. Buyer waives any and all right to sue the Seller or the underlying Bankruptcy Estate as named in R-1 hereinabove. Situations sometimes arise where an issue on title may not be cleared by Seller and that Seller may not transfer the property free and clear. If such an issue arises, either party may terminate the contract and the contract shall be deemed null and void and Buyer shall be entitled to return of Buyer's earnest money.

Buyer:

_____
Osarosemwen Erhabor

Seller:

_____
Ariane Holtschlag, Not Individually, but as Trustee in Bankruptcy

Buyer Broker:

_____
Sam Aiwuyo, of Samesosa Realty, Inc.

Seller Broker:

_____
Kim Wirtz of Century 21 Affiliated

{00227512}

trustee, in the exercise of the power and authority conferred upon and vested in her pursuant to t United States Bankruptcy Code, 11 U.S.C. section 101, *et seq.* No personal liability shall asserted or be enforceable against the Seller Trustee, individually, and the Bankruptcy Estate the Debtor, because or in respect of the execution of this Contract, the performance of t obligations hereunder, or the transaction contemplated hereby, all such liability, if any, bei expressly waived by Buyer.

R-9  In the event of a Seller breach, Buyer's only remedy shall be the return of the earnest mon and termination of the Contract. Buyer waives any and all right to sue the Seller or the underlyi Bankruptcy Estate as named in R-1 hereinabove. Situations sometimes arise where an issue title may not be cleared by Seller and that Seller may not transfer the property free and clear. such an issue arises, either party may terminate the contract and the contract shall be deemed nu and void and Buyer shall be entitled to return of Buyer's earnest money.

Buyer:
_Osarosemwen Erhabor_

Seller:
_Ariane Holtschlag, Not Individually, but_
_Trustee in Bankruptcy_

Buyer Broker:
DocuSigned by:
_Sam Aiwuyo_
Sam Aiwuyo, of Samesosa Realty, Inc.

Seller Broker:
DocuSigned by:
Kim Wirtz of Century 21 Affiliated

{00227512}